# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4424-15T1
                A-4426-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

R.J.C. and M.A.M.R.,

    Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF J.J.M. and A.M.M., Minors.[1]

_____

        Submitted November 13, 2017 — Decided November 28, 2017

        Before Judges Sabatino and Ostrer.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Essex County,
        Docket No. FG-07-0221-15.

        Joseph E. Krakora, Public Defender, attorney
        for appellant R.J.C. (Thomas W. MacLeod,
        Designated Counsel, on the briefs).

        Joseph E. Krakora, Public Defender, attorney
        for appellant M.A.M.R. (Jennifer L.
        Gottschalk, Designated Counsel, on the brief).

_____

[1] We use initials to protect the children's privacy.

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Roman Guzik, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

After a guardianship trial in May 2016, the Family Part terminated the parental rights of appellants R.J.C. ("Mother") and M.A.M.R. ("Father"), with respect to their two minor daughters, J.J.M. and A.M.M. The trial judge concluded from the proofs that the Division of Child Protection and Permanency ("the Division") had proven by clear and convincing evidence all four criteria for termination required under N.J.S.A. 30:4C-15.1(a)(1) through (4). Both parents now contest the trial court's decision in these consolidated appeals. The Law Guardian for the minors joins with the Division in opposing appellants' contentions on appeal. We affirm.

We need not elaborate in detail the facts adduced in the multiple days of trial testimony and the copious associated exhibits. The following brief summary will suffice.

Appellants are the biological parents of six children together. Mother gave birth to J.J.M., the couple's third child, in August 2004, and to A.M.M., the couple's fifth child, in August

2006.[2]  The parents are no longer living together, and Father has since married another woman.

The parents have had a long history with the Division dating back to 2003, when it began to receive a series of referrals about their household.  In 2008, the Division substantiated a referral of physical abuse by Father against their oldest child, and Division case workers began periodic visitations of the household. In 2009, the family moved from New Jersey to Puerto Rico.

While in Puerto Rico, Mother inflicted physical abuse upon the children in September 2009.  She did so by burning them with a heated spoon on the lips, as a reprisal after they had taken juice from the refrigerator without her permission.  Mother was criminally prosecuted in Puerto Rico for this harmful act.  She was convicted of child abuse and sentenced to three years of probation.  Father, who was not at home when the hot spoon incident occurred, was prosecuted for failing to report the child abuse. He was convicted and sentenced to four months in prison.

Puerto Rican child welfare authorities promptly removed the children from the parents' household after the spoon incident. The children have not lived with either parent since that time.

_____

[2] The other children are not the subject of this litigation. Consequently, we will refer to J.J.M. and A.M.M. in this opinion as "the children," unless the context indicates otherwise.

As of the time of the guardianship trial in 2016, the children had not resided with Mother or Father for almost seven years.

In September 2013, the children were placed in the care of a paternal aunt in the United States. Thereafter, in February 2014, the Division removed the children from the paternal aunt's home, after receiving a substantiated report that she had abused her own son. The children eventually were placed together with a foster family in New Jersey. The expert testimony presented at trial reflected that the children have bonded with the foster parents, although the experts differed somewhat about the extent of that bonding with respect to each parent. The foster parents wish to adopt the children.

Meanwhile, Father and Mother returned to the United States. Due to ambiguity as to whether their parental rights had been terminated earlier in Puerto Rico, the Division filed the present guardianship action against them under Title 30.

While the litigation was pending, the Division objected to providing services to the parents and allowing them visitation with the children, pending the completion of psychological evaluations and expert recommendations about whether visitation would harm the children and which services to provide. The evaluations were delayed to accommodate the parents' request for a bilingual expert. The parents then abruptly moved to Texas,

A-4424-15T1

missing their scheduled evaluations. Because the Division could not readily arrange evaluations in Texas, it rescheduled the evaluations to take place in New Jersey and paid for the transportation of the parents. The parents returned for the evaluations and thereafter chose to remain in New Jersey.

During trial, the four testifying experts expressed varying opinions as to whether therapeutic visitation would help the children. Notably, none of the experts opined that the parents were presently able to provide a safe and stable home to the children. Testimony from several of the experts detailed the mental health issues of each parent. The expert testimony further noted the behavioral problems of the older daughter, J.J.M., who has been diagnosed with ADHD.

The respective experts for the Division and the Law Guardian both recommended that the best interests of the children call for the termination of appellants' rights and having permanency with their foster parents, although the Law Guardian's expert advised that such termination should be preceded by therapeutic visitation to help prepare the children for that outcome. The experts for Mother and Father, on the other hand, recommended that termination be deferred, to see how events unfold while additional services are provided. Those defense experts both noted the residual bonds that the children have with their parents, and the generally

positive interactions they exhibited during bonding evaluation sessions.

After sifting through the proofs, the trial judge issued an oral decision concluding that all four criteria for termination had been established. Among other things, the judge noted that neither parent had custody of the children since 2009, and that the children's reported desires to be reunified with their parents were unrealistic. The judge further noted the favorable care provided by the foster parents, and stressed the need for the children to have permanency.

The applicable law is well established. When seeking the termination of a parent's rights under N.J.S.A. 30:4C-15.1(a), the Division has the burden of establishing, by clear and convincing proof, these four requirements:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) [The Division] has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's

placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a)].

The four factors are "not discrete and separate," but rather "overlap to offer a full picture of the child's best interest." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 554 (2014) (citing N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007)).

In reviewing the Family Part's application of these factors and findings from the trial proofs, we accord considerable deference. R.G., supra, 217 N.J. at 552 (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). The trial court's findings generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." R.G., supra, 217 N.J. at 552. A trial court's decision in this child welfare context should only be reversed or altered on appeal if the court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004).

Here, Mother contests the trial court's application of all four factors as to her own rights, whereas Father challenges only

factors three and four as to him. Having considered their arguments, we affirm, substantially for the sound reasons expressed in the trial judge's opinion.

Although appellants contend that the judge mischaracterized the record in certain respects and that he should have been more indulgent of their positions, the record strongly supports his decision to terminate their parental rights under the applicable law and the circumstances presented. The judge was not obligated to adopt the more optimistic opinions of the defense experts and to give less credence to the opinions of the experts for the Division and the Law Guardian. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (recognizing the well-established principle that a trier of fact may accept the opinions of a testifying expert and reject those of the opposing experts). The judge also rightly emphasized the children's need for permanency, particularly given the many years that have passed since the children were removed from their parents' custody in Puerto Rico.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4424-15T1